## Reakert *against* Sanford.

The husband is not liable on a negotiable note given by his wife even in a suit by a *bonâ fide* endorsee, unless it was given with his authority or approbation, and that must be shown before such note is admissible in evidence against the husband.

The husband's authority cannot be inferred from his knowledge that the wife was carrying on business and gave the note in the course of it.

In a suit by the holder of a negotiable note the defendant may show fraud in obtaining it, if he offers to prove that after being protested for non-payment, it was taken up by the payee and first endorser.

If the husband forbids his wife from dealing with a person or giving a note to any one, an endorsee of a note given by the wife acquainted with these circumstances cannot recover on it.

ERROR to the Common Pleas of the county of *Philadelphia*, in which N. W. Sanford and F. P. Sanford, co-partners under the firm of N. W. Sanford & Co., brought an action of *assumpsit* against Conrad Reakert on the following note drawn by the defendant's wife:

$85.29.                          *Philadelphia, May 19th, 1834.*
        Six months after date I promise to pay to the order of Job Baker, eighty-five dollars and twenty-nine cents, without defalcation, for value received.
                                        SARAH REAKERT.

At the Commercial Bank, Phila.                  2132
[Endorsed]                                  Sarah Reakert
                                              85.29
                                          Nov. 19. *comm.*

                    JOB BARKER,
                N. W. SANFORD & Co.
        Pay W. PATTON, Jun., Esq., cash., or order.      *
                                        H. BALDWIN, *Cash.*
Received Payment 22d November 1834.
                                W. PATTON, Jun., *Cash.*

1. The plaintiffs having called a witness, the defendant objected to the admission of any evidence showing an implied authority to the defendant's wife to make the note in question; but the court admitted the testimony and sealed an exception.

The plaintiffs then proved the handwriting of Sarah Reakert to the note, and of Barker to the endorsement. They further proved that Sarah Reakert kept a millinery establishment before and after her marriage with the defendant. Their dwelling and her store were under the same roof, and defendant kept a stove establishment elsewhere. One of the witnesses stated he sold her considerable amounts of goods in her line, without seeing her hus-

[Reakert v. Sanford.]

band, first under the name of Sarah Fisher, and afterwards Sarah Reakert, sometimes for cash, sometimes on credit, her credit being good. She had a bank-book and kept an account with the Commercial Bank, previous to October 19, 1832 in the name of Sarah Fisher, afterwards in the name of Sarah Reakert. She was a depositor there and drew checks. The defendant never examined her bank accounts or was connected with them. The note in suit was presented at that bank, but not paid for want of funds. The Farmers' and Mechanics' Bank were the holders of it at maturity by endorsement. The plaintiffs then gave in evidence her account with the Commercial Bank.

2. The plaintiffs then offered the note in evidence, to which the defendant objected, on the ground that there was no evidence of the partnership of the plaintiffs, and no evidence that the defendant authorized his wife to make the note; that his authority to her to make notes could not be presumed, but should be positively proved; but the court admitted the note in evidence, and the defendant excepted.

3. A witness then testified that he was in the silk business, and that Sarah Reakert had dealt with him for eight or ten years, both before and after marriage. That she once gave him a note for collection, but never gave him her own note. The defendant excepted to this evidence as irrelevant, but the court admitted it, and the defendant excepted.

The witness then stated that he received from Mrs Reakert a note drawn by D. Jones, and put it in the Pennsylvania Bank for discount at her request. It was discounted, but not paid at maturity. Previous to putting it in bank, he took it to the defendant and told him he brought it to get the defendant's name on it; that he understood a female's name was not sufficient. The defendant endorsed it.

4. The defendant then offered to prove by Mary Krickbaum that she was in the employ of Mrs Reakert for the last eight or ten years, and was intimately acquainted with her business. That Mrs Reakert on the 5th of July 1833, bought goods of Job Barker to the amount of $132.75, and gave her note for them, without the knowledge of her husband; that as soon as he knew of the transaction he disapproved of it; and afterwards discovering that she had been cheated by Barker in the sale of the goods, he forbade her from having any future dealings of any kind with Barker, and directed that the note that had been given should be paid at maturity, and expressly forbade her from purchasing afterwards from Barker, or giving her note to any one: that Mrs Reakert communicated these facts, by order of her husband, to Barker, afterwards and before the note in suit was given, and further informed him that if Mr Reakert ever caught him in the store he would cowhide him; that afterwards Barker, without the knowledge of the defendant, persuaded his wife to purchase other goods of him,

[Reakert v. Sanford.]

guaranteeing both the quantity and quality of the article, and induced her to give the note in suit in part payment thereof; that said goods proved to be wholly valueless at the time of the sale to her, and also greatly deficient in the quantity of the article mentioned.

This evidence was objected to by the plaintiffs, and overruled by the court, who sealed a bill of exceptions.

The witness then testified that she was in the employ of Mrs Reakert nine or ten years; that she was present when Mrs Reakert gave the note in suit to Job Barker. The signature to the note was Mrs Reakert's, but Barker wrote in the rest of the note. The words "at the Commercial Bank, Phila.," were not on the note at the time it was given, nor till the note was returned. Barker afterwards brought back the note to Mrs Reakert, and she asked, "What is this, 'at the Commercial Bank?'" He said he put it on to make it go down the better; he thought it would go better in New York. This was after the note was protested. Barker said it had been protested, and wanted her to pay it. Mrs Reakert told him there were better men than him in the penitentiary.

5. The defendant again offered the testimony of Mary Krickbaum, which had been previously overruled, but it was objected to and again overruled by the court, who sealed an exception.

The defendant requested the court to charge the jury on the following points:

1. That the plaintiff cannot recover unless the jury believe that the defendant expressly authorized the wife to make the note in question.

2. That the fact of the husband permitting the wife to conduct a millinery establishment, and to purchase goods for it, and to keep a bank account, is no evidence of an authority to her to draw notes.

3. That the assent of the husband cannot be presumed from such acts, but must be expressly shown.

4. That there is no evidence at all that the defendant ever authorized his wife to give the note, or ever assented to it after it was given, and that therefore the verdict must be for the defendant.

5. That the alteration of the note in question, after it was made, vitiates it, and the plaintiff cannot recover.

The Judge charged the jury as follows:

If this suit had been brought by Barker, he could recover the value of the goods sold, for the husband makes himself liable by permitting his wife to carry on the business for him. But this suit is brought by the endorsees. There is no evidence of any goods sold to defendant by them, and it is not pretended that there were. At law, the note of a married woman is void. It is contended that the wife gave the note as the agent of the defendant,

[Reakert v. Sanford.]

and the plaintiff must therefore recover on the note as the note of the defendant, *if he can recover at all.*   The husband may make his wife his agent to draw notes as well as to buy goods, or to do any other act.   It is incumbent on the plaintiff, therefore, to prove her agency.   This may be done by a confirmation of her acts. By permission to her to keep a store, he does not authorize her to draw notes.   If he did authorize her to give the note, he cannot now say in this suit that the goods were of no value, for the plaintiffs are endorsees of the note.   If the wife was in the habit of giving promissory notes, and he sanctioned them, he is liable.   If you are satisfied of this, your verdict must be *for the plaintiffs,* unless the note was altered after its making.   If the words "at the Commercial Bank, Philadelphia" were put on the note by Barker after Mrs Reakert gave the note, without her knowledge and consent, it is such an alteration of the note as vitiates it even in the hands of the plaintiffs, and they could not recover.   This is a question of fact for the jury to say whether the note was so altered or not.

Errors assigned:

1. The court erred in admitting evidence of an implied authority to the defendant's wife to make the note in question.

2. In admitting the note in evidence, there being no evidence of the partnership of the plaintiffs, nor of an authority from the husband to the wife to make the note.

3. In admitting the evidence stated in the third bill of exceptions.

4. In rejecting the testimony offered by the defendant before as stated in the fourth bill of exceptions.

5. In charging the jury that the husband made himself liable by permitting his wife to carry on business.

6. The court did not answer all the defendant's points

*J. Norris,* for the plaintiff in error.

The wife is the general agent of her husband in procuring necessaries for his family; but with respect to all other contracts, his authority to her must be proved.   1 *Chitt. Cont.* 442, 3.   The goods purchased by the wife here were for the purposes of her business: the husband derived no benefit from them.   An authority to an agent to pay debts does not include an authority to accept bills drawn on his principal.   *Gardner* v. *Baillie*, ( 6 *T. R.* 591). So a permission by the husband to the wife to trade, does not imply an authority to make notes.

The plaintiffs were not holders at maturity; they took the note dishonoured.   The same defence may be set up against them as against the original payee.   The evidence offered was therefore admissible to show fraud or failure of consideration; as well as to show that the wife had been forbidden by the defendant from having any future dealings with Barker, and from giving her note to any one.

[Reakert v. Sanford.]

As to the notice to the plaintiff to show consideration, he cited *Chitty on Bills*, (10*th Am. ed.*) 650 ; *Patterson* v. *Hardacre*, (4 *Taunt.* 114) ; *Heath* v. *Sansom*, (2 *Barn. & Adol.* 291) ; *Beltzhoover* v. *Blackstock*, (3 *Watts* 20) ; 2 *Camp.* 596 ; *Holme* v. *Karsper*, (5 *Binn.* 469).

*Perkins,* contra.

In all her contracts the wife acts as the agent of her husband, and he is just as liable on a note drawn by her in the course of business, as if he had drawn it himself. After giving her a general authority to trade, he cannot limit that authority.

The plaintiffs are innocent third persons without notice. They are not to be affected by the question of consideration. The notice given by the defendant should have been more special. It should have alleged want or failure of consideration.

The opinion of the Court was delivered by

KENNEDY, J.—This suit was brought by the defendants in error, as the endorsees of Job Barker, against the plaintiff in error, upon a note dated the 19th of May 1834, drawn in negotiable form by the wife of the plaintiff in error, in her own name, for $85.29, payable six months after the date thereof, to the order of Job Barker.

The first question presented by the bills of exception to the evidence admitted and the errors assigned thereon, is, was the evidence admitted and given such as tended to prove either an express or implied authority given by the plaintiff in error, the husband, to his wife to draw negotiable bills or notes, in the course of her dealing and business, for which the husband might be held liable? For unless the evidence offered and given was such as went to prove that such authority had been given by the husband to his wife, the note ought not to have been admitted in evidence. To render the husband liable to the payment of the note in the hands of even *bonâ fide* endorsees and holders, both reason and law would seem to require that it should be first shown that it was given by the wife with his approbation, or under his authority ; otherwise it ought not to be permitted by the court to be given in evidence against him, in order to make him liable to the payment of it. It is certainly not sufficient, in such case, to entitle the note to be given in evidence, though given for goods purchased by the wife for the purpose of carrying on her trade or business, to show that the wife was engaged in trade, or in the millinery business, as in this instance, and that she bought the goods on credit for the purpose of carrying on her business, with the knowledge of her husband, without any objection to her doing so on his part, or did so even with his express approbation. For a husband may be perfectly willing to be answerable for the prices of goods purchased on credit by his wife, for the purpose of carrying on the

[Reakert v. Sanford.]

business in which she is engaged, as long as it is done in such manner as that he, if she be defrauded or imposed on in the purchase of the goods, shall not be precluded from showing the fact as a defence against the payment of them. But if he agrees that she shall buy goods on credit, and give negotiable bills or notes for the payment of them, he thereby gives up that security or protection which otherwise he would be entitled to claim against frauds that may be practised on his wife in buying goods, to his great prejudice. For, the moment that such paper, given by the wife with his approbation for the payment of the goods, comes into the hands of *bonâ fide* purchasers, in the ordinary course of business, for valuable consideration, the husband becomes absolutely bound for the payment of it at maturity, however fraudulent the transaction may be, for and on account of which the paper was given. In a matter, then, of such vast importance to the interest of the husband, it never can be presumed, and indeed it never ought to be inferred, on slight grounds, that he has parted with his right to full protection against frauds committed on his wife, that may affect or prejudice his interest. This being the law in relation to this point, did the evidence offered and received, in this case, tend to show that the plaintiff in error had either expressly or impliedly authorized his wife to give or draw bills or notes, of a negotiable character, to secure the payment of the price of goods purchased by her for the use of her business? I have looked for it, but in vain; I cannot perceive that the least tittle of such evidence was given. We therefore think that the court below erred in admitting the note to be given in evidence.

The next question which arises grows out of the bill of exception taken to the opinion of the court in rejecting the evidence offered by the plaintiff in error. He, after showing that, previously to the trial, notice had been given to the defendants in error, the plaintiffs below, that on the trial of the cause they would be required to show what consideration they had given for the note in suit, offered to prove by Mary Krickbaum, (here his honour states the offer in the 4th bill of exceptions). This evidence was objected to by the plaintiffs, on the ground that they were *bonâ fide* holders of the note for a valuable consideration, without notice of any of the matters that were offered to be proven. The court taking up this notion also rejected the evidence, but permitted the plaintiff in error to prove by the same witness, that witness was in the employ of Mrs Reakert, his wife, for nine or ten years; that she was present when Mrs Reakert gave the note in suit to Job Barker, saw her give it to him in the shop; that the signature to the note was Mrs Reakert's, but Barker wrote in the rest of the note. The words "At the Commercial Bank of Philadelphia" were not on the note at the time it was given, nor till the note was returned. Barker brought the note

back afterwards himself to Mrs Reakert, when she asked him " What is this, ' At the Commercial Bank?' " He said he put it on to make it go down the better; that he thought it would go better in New York. *This was after the note was protested.* He said it had been protested. He had the note with him then, and wanted Mrs Reakert to pay it. She said there were better men than him in the penitentiary. After this evidence was given, the plaintiff in error again offered the testimony proposed to be given by Mary Krickbaum, which had been overruled as stated above; but it was objected to and overruled a second time by the court. We are clearly of opinion that the court below erred in rejecting the testimony thus offered, because the testimony given by Mary Krickbaum went to show distinctly that the note, after it had been protested for non-payment, was taken up by Barker, the payee and first endorser on it, and that he thereby became the holder of it again after it had become payable. And if so, which was a fact to be left to the jury, to be decided by them according to the evidence, it is perfectly clear that the plaintiffs could not, after that, claim to exclude the evidence on the ground that they were *bonâ fide* holders of the note for a valuable consideration without notice; for, taking it after maturity, they took it subject to all objections which could be interposed to the payment of it by the plaintiff in error in the hands of Job Barker, the payee, from whom, it must be presumed, they received it. But further, in addition to the evidence given by Mary Krickbaum, showing that the note was taken up by Barker after it had been protested for non-payment, the fact appears to be so by an endorsement on the note itself, partly blurred, but still quite legible, stating it to be paid by Job Barker to Patton, an officer, as it would seem, in the bank where it was held at the time of and after protest.

That the evidence rejected was material to the issue, cannot be questioned by the plaintiffs after they got the note in evidence, and especially too under the view which the court seemed to have taken of the case. For the court having permitted the note to be read in evidence to the jury, must have considered that the jury might infer from the circumstances given in evidence, that the plaintiff in error had authorized the giving of the note by his wife. But the evidence offered and rejected went to show that the plaintiff in error had not only actually forbidden his wife from dealing with Barker, but also from giving a note to any one; of all which Barker was made fully acquainted before he took the note in suit. Thus showing, if the jury should have credited the evidence, that the plaintiffs below had not even the colour or shadow of any ground to recover on. But in another view it was material, even supposing that the plaintiff in error had authorized his wife to give notes for goods purchased by her in the course of her business, because it tended to prove that the notes had been obtained

[Reakert v. Sanford.]

upon a consideration which had failed, in part at least, if not upon false and fraudulent representations.

Judgment reversed, and a *venire de novo* awarded.