## HANCOCK BANK *versus* ALFRED JOY.

In England, the husband may authorize his wife to indorse or accept bills for him in her own name, and he will thereby be bound as indorser or acceptor.

Such is also the law in the State of Pennsylvania.

By the common law, a note made payable to a married woman, is a note to the husband. It instantly becomes his property; and her indorsement of it transfers no property in the note.

By the statutes of this State, the wife is allowed to act as *sole*, in reference to the management of her own estates.

Whether the husband will in any event be liable for the acts of his wife in relation to her own property, *quære*.

The wife of A. having, in his absence and by his authority, accepted a draft for him in her own name, the rights of the parties are to be determined by the rules of the common law, which are not affected in their application to this case by the statutes of this State. Such indorsement will therefore bind the husband.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

This was an action of ASSUMPSIT on a draft drawn in California, on a house in Boston, payable to the order of defendant's wife, which she indorsed in her own name and transferred to the plaintiffs for a valuable consideration.

The draft was protested for non-payment. There was evidence introduced by the plaintiffs tending to show, that the defendant was asked to pay over the amount of the draft, which he declined to do; that he was asked if he authorized his wife to indorse the drafts, to which he replied that he

Hancock Bank *v.* Joy.

did, and that he inquired as to the best method of transmitting money, and had all his drafts drawn in favor of his wife, and had directed her to indorse them.

*Kent* and *Drinkwater*, for plaintiff.

1. The defendant is liable on the ground of agency. *Shaw* v. *Emery*, 38 Maine, 485.

2. If this be considered the contract of the wife, it was made by the request of her husband, and received his assent and ratification. An action may be maintained upon it against him alone or against both. The counsel cited *Petty* v. *Anderson*, 2 C. & P. 38; *Clifford* v. *Burton*, 1 Bing. 190; *Smallpiece* v. *Daws*, 7 C. & P. 40; *Menard* v. *Wells*, 5 C. & P. 583; *Rukert* v. *Sanford*, 5 Watts & Sargent; *Harris* v. *Davis*, 1 Ala. 259; *Hughes* v. *Chadwick*, 6 Ala. 651; *Read* v. *Leyard*, 4 Eng. L. & E., 523.

3. "In order to render the husband liable for a negotiable note, *indorsed by his wife*, it must be shown that it was indorsed by his authority, express or implied." *Leeds* v. *Vail*, 15 Penn. (3 Harris,) 185. This distinctly sustains our case.

A husband is liable for his wife's contracts only where his assent, express or implied, is shown. *Field* v. *Eves*, 4 Harr. 385.

From these cases it is clear:—(1.) That a husband may be held on contracts made by his wife, which are voidable by her. (2.) That he may be thus held on such contracts (in many cases) where his name is not used. (3.) That he may be held on negotiable instruments made and signed by his wife in her own name, and as her own contract, apparently.

4. His liability, as indorser, is fixed by the protests and the testimony of the cashier. The notices were properly given to the wife, as the party indorsing, her husband being absent. 6 Mass. 386.

5. If it is held that the indorsement created no contract valid against either husband or wife, then justice and law require that the bank should be considered merely as collectors of this draft for them, and as having advanced the money; not as purchasers of the draft, but as a convenient medium

for collection; and that the bank is entitled to recover it back.

*J. A. Peters* and *Rice*, for defendant.

The bank did not take the draft to collect, but purchased it. The defendant's name is nowhere on it nor in either of the protests. He neither signed nor indorsed it, nor was he notified as indorser. He never had any thing to do with the bank about it. There is no evidence that he authorized his wife to sign *his* name; and if he did, she did not indorse it in his name; nor did he direct her to sell it to the bank. And if he had, there was no representation made to the bank of such a fact. The bank did not rely on any statement, but relied merely on the paper itself. The name of Mrs. Joy was taken merely to give the draft negotiability. Of course, there is not so much reason to hold him in this case as if he had presented it himself and got the money; but even in that case he would not be holden without an indorsement.

The count for money had and received does not enlarge plaintiffs' claim upon the paper as it stands. In the first place, defendant never had the money; the wife had lent and used it. Then, again, he did not receive the bills of the bank, and would not be liable under the count for "money had and received." *Mercantile Bank* v. *Cox*, 38 Maine, 500.

In truth, the only reason that is suggested why defendant should be holden, is because Sarah is his wife, his "partner;" a "sleeping partner" she indeed is, but, therefore, to hold him liable in this case, would be to carry the doctrine further than the authorities will justify.

But by our statutes and decisions now, a married woman can own notes and sell them and negotiate them separate from her husband, and can receive them directly from her husband. And our Court has gone so far as to decide that a man can convey real estate directly to his wife. *Johnson* v. *Stillings*, 35 Maine, 427.

So could defendant give his wife this draft, and the legal presumption is, that it was hers, and there is nothing in the case to remove such a presumption.

APPLETON, J.—The defendant, having funds in California, and wishing to transmit them to this country, purchased, for that purpose, at Columbia, (Cal.,) of Adams & Co., a draft on their house in Boston, (Mass.,) payable to the order of his wife, which he transmitted to her.

It is clearly established by the evidence, that the funds with which the draft was purchased, belonged to the defendant, and that his wife was to use the draft and receive the proceeds thereof by his direction and authority.

The wife of the defendant indorsed the draft in suit, which she received from him, to the plaintiffs, and received of them the amount for which it was drawn. The acceptors having failed, the draft was protested for non-acceptance and non-payment, and seasonable notice thereof was forwarded to the indorser.

By the common law, a note made payable to a' married woman is a note to the husband, and becomes instantly his property, and her indorsement transfers no property in the note. *Savage* v. *King*, 17 Maine, 301. But the wife may convey a title by indorsing in her own name with her husband's authority. *Prestwick* v. *Marshall*, 7 Bing. 565.

The material question for determination in the case under consideration, is, whether the husband is liable upon a contract made by the wife, in her own name, but with his authority. If the wife can bind the husband under such circumstances, it is immaterial whether it be as the maker of a note or the indorser of a draft.

To determine satisfactorily the rights of the parties, it may not be amiss to examine the various decisions in England and in this country, which bear upon the points involved in this case.

In *Prestwick* v. *Marshall*, 4 C. & P., 594, it was held that the indorsement by a married woman, *with her husband's assent,* of a bill of exchange, drawn by her, is binding upon him, and will pass the interest in the bill so as to enable him to sue the acceptor. In this case the indorsement was by the wife in her own name. The case came subsequently before the

Court upon a motion to set aside the verdict obtained at *Nisi Prius*, but, upon argument, the ruling of the Justice, before whom the cause was tried, was sustained. *Prestwick* v. *Marshall*, 7 Bing. 565.

In *Prince* v. *Brunatte*, 1 Bing. N. C., 435, the suit was against the acceptor of a bill of exchange, alleged to have been drawn and indorsed by Sarah Ellwood. The defence was, that the indorser was the wife of Thomas Ellwood, who was then alive. It was there held to be sufficient to pass the title to the bill that it was drawn and indorsed by the authority of the husband.

In *Linders* v. *Bradwell*, 5 Man., Grang. & Scott, 583, a bill of exchange was addressed to the defendant by the name of William Bradwell, his true name being William David Bradwell, and was accepted by his wife, by writing across it her own name, "Mary Bradwell." There was no evidence of any express authority in the wife so to accept the bill; but, on its being presented to the husband, after it became due, he said he knew all about it, that it was a millinery bill, and that he would pay it shortly. The Court held the husband was liable as acceptor. MAULE, J., in delivering his opinion, says, "if a man says to his wife, 'accept such a bill, drawn upon me in your own name,' unless he means to be bound by it, he means nothing. Unless such an acceptance operates to charge him, it has no operation at all. The defendant clearly meant to bind himself, if in law he could do so. It is said that a drawee cannot bind himself otherwise than by writing his name on the bill. Here the defendant has, by the hand of his wife, written 'Mary Bradwell' on the bill. If he had done this with his own hand, it clearly would have been his own acceptance; and I know of no rule of law, that makes such an acceptance void. * * I admit that nobody but the defendant could accept this bill so as to charge him; but he has accepted it in the hand and by the name of his wife, and that, I think, is a sufficient acceptance to bind him." It is therefore manifest, that in England the husband may author-

Hancock Bank *v.* Joy.

ize the wife to indorse or accept bills in her own name, and render him liable by such indorsement or acceptance.

In Pennsylvania, the same principles of law have been recognized as sound. In *Rukert* v. *Sanford*, 5 W. & S., 164, the note in suit was given by the wife, in her own name. It was there held that the husband was liable on the promissory note of the wife, given, by his authority and approbation, in her own name. " Our law," says BURNSIDE, J., in *Leeds* v. *Vail*, 3 Harris, 185, " is, that a negotiable note, given or indorsed by a wife, in the hands of a *bona fide* holder, cannot be given in evidence against the husband, unless it be first shown that it was given with his approbation or under his authority." The same general doctrines are affirmed by the Court in *Field* v. *Eves*, 4 Harr. (Del.) 385.

In *Stevens* v. *Beal*, 11 Cush. 291, it was held that a wife, with the consent of her husband, might indorse in her own name a promissory note made payable to her during coverture, and pass a good title to the indorsee. But such indorsement, if valid to pass the title, is equally so to impose upon the indorser the usual liabilities arising from the contract of indorsement.

The draft in this case being the property of the husband, and the wife indorsing it by his authority, in her own name, but on his account, we think his liability the same as if the indorsement had been by him.

By the statutes of this State the wife is allowed to act as sole in the management of her own estates. Whether the husband will, in any event, be liable for the acts of the wife relating to her own property, is not a matter before us. The draft in suit belonged to the husband and not to the wife, and the rights and liabilities of parties are to be determined by the rules of the common law and not by the special provisions of our statute. *Defendant defaulted.*

TENNEY, C. J., and HATHAWAY, MAY, and GOODENOW, J. J., concurred.